IN THE COURT OF APPEALS

FILED

**February 3, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

JOHN P. SQUIBB and wife,      )    WASHINGTON CHANCERY
MARTHA JO SQUIBB and JAMES    )    C. A. NO. 03A01-9609-CH-00291
H. WIDENER,                   )
                              )
          Plaintiffs-Appellees )
                              )
                              )
                              )
                              )
                              )
vs.                           )    HON. THOMAS J. SEELEY
                              )    CHANCELLOR
                              )
                              )
                              )
                              )
                              )
TED C. SMITH and wife, ROSE E. )   AFFIRMED AND REMANDED
SMITH,                        )
                              )
          Defendants-Appellants )


MARK S. DESSAUER, Hunter, Smith & Davis, Kingsport, for Appellant Ted C. Smith.


JAMES E. BRADING, Herndon, Coleman, Brading & McKee, Johnson City, for appellees.


O P I N I O N


McMurray, J.

This action was instituted by the plaintiffs to recover a pro-rata share of monies they were required to pay on a guaranty agreement wherein the defendants were co-guarantors. The trial court found that there were three co-guarantors, Mr. Squibb, James H. Widener and Ted C. Smith (defendant). He apportioned liability equally among the three. The court found that the purported signature of Ms. Smith on the guaranty agreement was not her signature. The case was dismissed as to the defendant, Rose E. Smith. No appeal was taken from the action of the court dismissing the case as to Ms. Smith. Judgment was entered in favor of the plaintiffs, John P. Squibb and wife Martha Jo Squibb, in the amount of $45,402.04 plus prejudgment interest at the rate of 10% per annum from April 10, 1991 to April 9, 1996, in the amount of $22,701.02 for a total judgment of $68,103.06. A like judgment was entered in favor of the plaintiff, Widener. From these judgments, the defendant appeals. We affirm the judgment of the trial court.

The defendant presents the following issues for our review:

1. Did the trial court err in failing to credit Smith for his pro-rata share of the collateral, which secured the total outstanding indebtedness of Action to the Bank, as evidenced by the note, when such collateral was surrendered to the plaintiff when they purchased the note from the Bank.

2. Did the trial court err in finding there were three rather than four guarantors in determining Smith's pro-rata share of the common liability?

2

3. Did the trial court err or alternatively abuse its discretion in awarding prejudgment interest on the basis that awarding the plaintiffs' interest resulted in them receiving a judgment in excess of the amount they paid in excess of their pro-rata share of the common liability?

This case was tried before the court at a bench trial. Our standard of review, therefore, is <u>de novo</u> upon the record, with a presumption of correctness of the findings of fact by the trial court. Unless the evidence otherwise preponderates against the findings, we must affirm, absent an error of law. See Rule 13(d), Tennessee Rules of Appellate Procedure. If the plaintiff is entitled to a judgment, appellate courts have a duty to render judgments which the lower court should have rendered. <u>See e.g.</u>, <u>Toomey v. Atyoe, et al</u>, 32 S.W. 254 (Tenn. 1895), and <u>Perry v. Carter</u>, 219 S.W.2d 905 (Tenn. 1949). <u>See also</u> Rule 36(a), Tennessee Rules of Appellate Procedure.

Mr. Squibb, Mr. Widener and the defendant, Mr. Smith, were the owners of all the outstanding stock in Action Mortgage Company. Action executed a note payable to First Tennessee National Bank Association in the principal amount of $2,000,000.00. They each executed a personal guaranty agreement. The Bank required some additional collateral when it became dissatisfied with the amount of collateral pledged to the bank. As a result, Mr. & Ms. Squibb executed a deed of trust on property owned by them as tenants by the entirety. Mr. Widener also executed a deed of trust on

3

property which he owned in his own name. Mr. Smith did not provide any additional collateral.

When Mr. Squibb and Mr. Widener were called upon to pay the note as guarantors, they took an assignment of the note and their collateral was released. While there is no dispute as to the amount of indebtedness which Mr. Squibb and Mr. Widener paid to the bank, Mr. Smith claims that he is entitled to a credit against his pro-rata share of the indebtedness for the value of the collateral the Squibbs and Mr. Widener gave to the bank. It is conceded that the plaintiffs did not take an assignment of the note at a discount but paid the entire amount then due thereon. Defendant argues that the transaction is tantamount to a discount, however, because the plaintiffs received a release of the deeds of trust and that the value of the property upon which the deeds of trust were executed was $225,000.00 which could have been used to satisfy the note.

We find the argument advanced by the defendant to be intellec-tually creative but less than palatable to a reasonable mind seeking equity. He argues that the property pledged to secure the Action debt became corporate collateral and "was essentially a contribution to capital by two of its shareholders, Mr. Squibb and Mr. Widener." Appellant cites us to no authority either in this jurisdiction or any other jurisdiction and we have found none which

4

supports his argument that supplying personal collateral to secure a corporate loan constitutes a contribution of capital.

Smith seeks relief based upon the theory that contribution is purely an equitable principle. In support, he asserts that the principle of contribution applies only in situations where the equities of the parties are equal and share a common obligation or liability, citing TRW Title Ins. v. Stewart Title Guar., 832 S.W.2d 344 (Tenn. App. 1991). We do not disagree with the rule put forth by the appellant but his argument misapplies the rule. Under the facts in this case, Mr. Squibb, Mr. Widener and Mr. Smith shared a common liability under their guaranty agreement to the bank to pay the balance of the loan. Had the bank chosen to foreclose on the properties of Squibb and Widener in satisfaction or in partial satisfaction of the loan, any monies derived from foreclosure would have inured to the benefit of Smith at the expense of his co-guarantors. Equity would demand that the proceeds from the foreclosure be credited to Squibb and Widener as against the co-guarantor, Mr. Smith.

We agree with the observations of the trial court:

> Mr. Smith is not entitled to a credit for the collateral that was turned back to Mr. Widener and Mr. Squibb. Those were their own properties. They were not assigned and given possession of this note on a discounted basis; they did not receive any property from the principal obligor, Action Mortgage, which would reduce the full

5

amount of monies that they had to pay. To me it's disingenuous to argue that Mr. Smith is entitled to a credit when both Mr. Widener and Mr. Squibb paid the full amount of the loan and simply received their own property back without a lien thereon. There is no double recovery by virtue of receiving back their properties without a lien. There's no discount to them, and certainly to give Mr. Smith a credit for the value of their own properties put up as collateral would, in my mind, be totally inequitable.

Gibson's Suits in Chancery (Inman, 7th ed. 1988), Section 34 states, among other things, the following:

§ 34. Equity Enforces What Good Reason and Good Con-
science Require. —

\* \* \* \*

In the administration of justice, conscience must be conformed to reason and thus become good conscience, and reason must be conformed to conscience and thus become good reason; and whatever good conscience and good reason unite in approving is the nearest approach to perfect justice man is able to attain. This union of good reason and good conscience is what in a general way is meant by the term Equity in the administration of justice.

\* \* \* \*

We accept the foregoing as befittingly applicable to the question under consideration. Good conscience and reason are united in the conclusion reached by the trial court. We concur with his conclusion. There is no merit in appellant's first issue.

The second issue challenges the propriety of the trial court's finding that there were three rather than four guarantors who

6

should share in the burden of the indebtedness. Appellant argues that Ms. Squibb should be considered a forth surety. The trial court found that she was not. The general rule relating to the obligations of guarantors is as follows:

> Guarantys on a commercial contract are special contracts in Tennessee law. In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit. <u>Farmers-Peoples Bank v. Clemmer</u>, 519 S.W.2d 801, 805 (Tenn. 1975); <u>Hassell-Hughes Lumber Co. v. Jackson</u>, 33 Tenn. App. 477, 486, 232 S.W.2d 325, 329 (1949). This principle of law was settled in this state by the case of <u>Bright v. McKnight</u>, 33 Tenn. 158 (1853) wherein our Supreme Court held that "a guarantor shall be held bound to the full extent of what appears to be his engagements, and the rule in expounding these undertakings is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit." Id. at 168.

<u>Kubota Tractor Corp. v. Fugate Implement Co</u>., an unreported opinion of this court filed at Knoxville, June 2, 1989. (1989 Tenn. App. LEXIS 398).

We are of the opinion that the above rule relates to the relationship between the guarantor and the beneficiary of the guaranty rather than between co-guarantors. Therefore, as between the Bank and Ms. Squibb, it would be difficult to successfully argue that Ms. Squibb was not a guarantor of the indebtedness owed to the bank since she did, in fact, sign the instruments. The issue under consideration here, however, is not an issue between the guarantor and the creditor, but is an issue between the guarantors.

7

The court found that there were three principals involved, Mr. Squibb, Mr. Widener and Mr. Smith. The court further found that there was an agreement among the three principals that each would bear an equal share of the liability of Action Mortgage Company to First Tennessee Bank. The court specifically found that the mutual promises of the three parties were sufficient consideration to satisfy the law with regard to consideration as a requirement for an enforceable agreement. We agree. The mutual promises of the parties to the contract provides sufficient consideration. Pearson v. Garrett Financial Services, 849 S.W.2d 776 (Tenn. App. 1992); Bill Walker & Associates v. Parrish, 770 S.W.2d 764 (Tenn. App. 1989). See also Calloway v. O'Neal, 12 S.W.2d 364 (Tenn. 1928). The appellant argues, however, that the mutual promises resulted in no benefit flowing to him but on the contrary, his liability was increased. We must respectfully disagree. While the agreement may have increased Mr. Smith's liability as co-guarantor, he did receive a value from the mutual promises. A benefit directly flowing to Mr. Smith was an effective release from civil liability for any action which the other parties to the oral agreement may have had as a result of Smith's forging of his wife's name to the guaranty documents furnished to the Bank.

The court's findings regarding an oral agreement between the three principals is well supported by the evidence, especially in view of the action of Mr. Smith in forging Ms. Smith's name on the

8

documents thus allowing her to escape liability as a guarantor. As appellant points out, the court did find that, as to the bank, there were four guarantors, one of whom was Ms. Squibb. This finding, however, is not conclusive as between the three principals. They were still at liberty to agree to a division of the guaranty liability among themselves as they chose. The court found that the testimony of Mr. Squibb and Mr. Widener was unrefuted. Mr. Smith did not testify. We find that there is no merit in this argument.

The appellant further asserts that the oral agreement as found by the court is in violation of the Statute of Frauds, T.C.A. § 29-2-101 which provides, among other things, that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person unless the promise or agreement is in writing and signed by the party to be charged. In Calloway, supra, the court quoted and approved the following rule:

> The overwhelming weight of authority is to the effect that a promise by a surety to indemnify a cosurety or an agreement that a cosurety, or an agreement that a cosurety shall be responsible only for a certain proportion of any loss sustained, is not a promise to answer for the debt or default of another, and therefore need not be in writing ... .

Calloway, page 365.

We find no reason why this should not be applied to the facts of this case. We hold that an oral agreement among or between cosureties or coguarantors whereby the parties agree to an apportionment of liability as between or among themselves, does not fall withing the purview of the statute of frauds. We find no merit in the defendant's argument that the agreement is in violation of the Statute of Frauds.

The defendant also challenges the testimony of Mr. Squibb and Mr. Widener relating to the oral agreement as being in violation of the rule against the reception of parol evidence. The parol evidence rule has been stated in various ways. Generally stated, the rule, in sum and substance, is that parol evidence is inadmissible to contradict, alter, or vary the terms of a written, unambiguous document. See Stamp v. Honest Abe Log Homes, Inc., 804 S.W.2d 455 (Tenn. App. 1990). It has no application, however, to agreements separate and apart from an earlier agreement.

> The parol evidence rule does not prohibit the establishment by parol evidence of an agreement made subsequent to the execution of the writing. Although such subsequent agreement may have the effect of adding to, changing, modifying or even altogether abrogating the contract of the parties as evidenced by the writing; the parol evidence does not in any way deny that the original agreement of the parties was that which the writing purports to express, but merely goes to show that the parties have exercised the right to change or abrogate the same, or to make a new and independent contract.

Trice v. Hewgley, 53 Tenn. App. 259, 381 S.W.2d 589 (1964)

10

We find that under the authority of <u>Trice</u> the parol evidence rule has no application to this case. We find no merit in this issue.

Appellant's final issue charges the trial court with error or abuse of discretion in awarding prejudgment interest to the plaintiffs. It is well-settled that the allowance of prejudgment interest lies within the sound discretion of the court.

T.C.A. 47-14-123 provides that prejudgment interest may be awarded as an element of damages "in accordance with the principles of equity at any rate not in excess of the maximum effective rate of ten percent (10%) per annum" <u>See Schoen v. J.C. Bradford & Co.</u>, 667 S.W.2d 97 (Tenn. App. 1984. The award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed upon appellate review unless the record reveals a manifest and palpable abuse of discretion. <u>See</u> <u>Engert v. Peerless Insurance Co.</u>, 53 Tenn. App. 310, 382 S.W.2d 541 (1964); <u>B.F. Myers & Son of Goodlettsville, Inc. v. Evans</u>, 612 S.W.2d 912 (Tenn. App. 1980); <u>In re Estate of Cooper</u>, 689 S.W.2d 870 (Tenn. App. 1985); <u>Teague Brothers, Inc. v. Martin & Bayley, Inc.</u>, 750 S.W.2d 152 (Tenn. App. 1987). The award of prejudgment interest as an element of damages is not considered a penalty imposed upon the defendant, but is

11

allowed in accordance with the principles of equity. <u>In re Estate of Davis</u>, 719 S.W.2d 526 (Tenn. App. 1986).

<u>Otis v. Cambridge Mut. Fire Ins. Co</u>., 850 S.W.2d 439 (Tenn. 1992).

In this case, we find no abuse of discretion on the part of the trial court. We also concur with the conclusion of the trial court that this is a case wherein equity demands an award of interest.

We affirm the judgment of the trial court in all respects. Costs of this appeal are assessed to the appellant and this case is remanded to the trial court.

_____
Don T. McMurray, Judge

CONCUR:

_____
Charles D. Susano, Jr., Judge

_____
William H. Inman, Special Judge

12

IN THE COURT OF APPEALS

| | | |
|---|---|---|
| JOHN P. SQUIBB and wife, | ) | WASHINGTON CHANCERY |
| MARTHA JO SQUIBB and JAMES | ) | C.A. NO. 03A01-9609-CH-00291 |
| H. WIDENER, | ) | |
| | ) | |
| Plaintiffs-Appellees | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | HON. THOMAS J. SEELEY |
| | ) | CHANCELLOR |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| TED C. SMITH and wife, ROSE E. | ) | AFFIRMED AND REMANDED |
| SMITH, | ) | |
| | ) | |
| Defendants-Appellants | ) | |

## ORDER

This appeal came on to be heard upon the record from the Chancery Court of Washington County, briefs and argument of counsel. Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

We affirm the judgment of the trial court in all respects. Costs of this appeal are assessed to the appellant and this case is remanded to the trial court.

PER CURIAM