**SUNTRUST BANK, EAST TENNESSEE, N.A., (Successor to Third National Bank of East Tennessee)**

v.

**Steven T. DORROUGH.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 17, 2001.

Permission to Appeal Denied by Supreme Court Oct. 29, 2001.

**154**

Thomas M. Leveille, Knoxville, TN, for appellant, Steven T. Dorrough.

James A. Matlock, Jr., Knoxville, TN, for appellee, SunTrust Bank, East Tennessee, N.A.

## OPINION

FRANKS, J., delivered the opinion of the court, in which GODDARD, P.J., and SWINEY, J., joined.

In this action to enforce a Guaranty Agreement executed by defendant, the

Trial Judge granted plaintiff summary judgment. Defendant appealed. We affirm.

In this action by plaintiff to recover under a guaranty agreement executed by the defendant, the Trial Judge granted plaintiff summary judgment on the ground that defendant had "waived his asserted defense of impairment of his guaranty by specific provisions in his Guaranty Agreements", and judgment was entered in the amount of $1,492,711.37. Defendant has appealed.

Toyota of Morristown Leasing, Inc. executed a promissory note on March 13, 1987 in the principal amount of $500,000.00 in favor of Third National Bank in Knoxville. On May 22, 1987, Toyota of Morristown, Inc. executed a promissory note in the original principal amount of $2,000,000.00 in favor of the Bank. SunTrust Bank, East Tennessee, N.A. is the successor in interest to Third National Bank, and brought this action.

Defendant Steven T. Dorrough is a stockholder of both Toyota of Morristown, Inc. and Toyota of Morristown Leasing, Inc., (collectively referred to hereinafter as "Toyota of Morristown"). Defendant executed two Guaranty Agreements in favor of Third National that guaranteed the indebtedness of Toyota of Morristown Leasing in the amount of $500,000.00 and Toyota of Morristown in the amount of $2,000,000.00, on March 13, 1987 and May 22, 1987 respectively.

The guaranty executed by Steven Dorrough in favor of Third National Bank provides in pertinent part:

[I] hereby personally guarantee to you ... the full and prompt payment at maturity to you ... of any and all sums of money that may now, or at any time hereafter, be owing to you ... by Toyota of Morristown, Inc. on the note or notes of said Toyota of Morristown, Inc. executed by it to you ... upon notes, bill receivable, drafts, acceptances, checks and other evidences of indebtedness which you ... may at any time hereafter discount or cash for said Toyota of Morristown, Inc. and which may come into your possession by discount, purchase or otherwise; and [I] hereby authorize you ... at any time, in such manner and upon such terms as you ... may see fit to renew, extend the time for, or change the manner of, payment of any such sum or sums of money, or any part thereof, without notice to [me], and hereby agree that such renewal, change or extension of time for, or change in the manner of, payment shall not in any way release [me] from or reduce or otherwise affect [my] liability on this guaranty.

It is hereby expressly understood and agreed that the total liability of the undersigned under this guaranty shall in no event exceed the aggregate principal sum of $2,000,000.00 ... but [I] expressly guarantee, in addition, to pay all interest and all costs, attorney's fees and other expenses of collection, which you ... may incur or pay.

It is further understood and agreed that this shall be a continuing guaranty and shall remain in full force and effect until written notice shall have actually been received by you that it has been revoked by the undersigned ...

The guaranty executed as to the indebtedness of Toyota of Morristown Leasing, Inc., is identical in its language except that it provides that the total liability on the guaranty shall not exceed $500,000.00.

The indebtedness acquired by Toyota of Morristown in favor of Third National arose under what is commonly know as a "floor plan" arrangement for financing the purchase of new automobiles by Toyota of Morristown for inventory. The Bank also

provided financing for customers of Toyota of Morristown for the purchase of vehicles. Both Toyota of Morristown, Inc., and Toyota of Morristown Leasing defaulted on their respective promissory notes in 1989, and have been liquidated in Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Tennessee.

SunTrust made a demand on the defendant to honor his guaranty agreements, and when he failed to comply, the Bank brought this action on September 29, 1995.

■ The standards governing an appellate court's review of a motion for summary judgment are well settled. No presumption of correctness attaches to the lower court's judgment, and we are required to determine whether the requirements of Tenn.R.Civ.P. 56.01 have been met. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997).

The moving party has the burden of proving that its motion satisfies the requirements for judgment. *Bain.* When a party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed material facts, to be resolved at trial. *Byrd v. Hall,* 847 S.W.2d at 215.

It is not disputed that Toyota of Morristown and Toyota of Morristown Leasing defaulted on their respective promissory notes with SunTrust Bank, and they have been liquidated in bankruptcy and had the remainder of their debt discharged. Further, it is undisputed that Steven Dorrough signed continuing guaranty agreements in favor of the Bank for the debts of the defaulters, and based upon these undisputed facts, the Trial Court found that the defendant had waived his asserted defenses of impairment of his guaranty by the specific provisions of the guaranty agreements and the Bank was therefore entitled to Summary Judgment as a matter of law.

Defendant insists that he is entitled to be relieved as a guarantor because plaintiff impaired the guaranty agreements by releasing collateral consisting of 111 vehicles to various customers while applying all payments from Toyota of Morristown to repossessions instead of the promissory note for its floor plan financing. He argues that the Bank, by not obtaining any substitution of collateral, left the "floor plan financing" note under-secured.

■ Guaranties on a commercial contract are special contracts under Tennessee law. In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit. *Squibb v. Smith,* 948 S.W.2d 752, 755 (Tenn.Ct.App.1997). *Also see Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975). This principle of law dates back to *Bright v. McKnight,* 33 Tenn. 158 (1853), where our Supreme Court held that "a guarantor shall be held bound to the full extent of what appears to be his engagements, and the rule in expounding these undertakings is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit." *Id.* at 168.

■ As a general rule, the surrender or release by a creditor without the consent of the guarantor of any security held at the time when the debt is guaranteed will operate to discharge the guarantor. *Ottenheimer Publishers, Inc. v. Regal Publishers, Inc.,* 626 S.W.2d 276, 279 (Tenn.Ct.App.1981). A necessary component of this rule is that the guarantor must not consent to the release of the collateral. *Id.* The burden is on the creditor to show that the guarantor consented to the release of the collateral, and that consent is

normally manifest in the note itself. *Id.* at 280.

T.C.A. § 47–3–606 provides, in part, that the holder discharges any party to the instrument to the extent that, without such party's consent, the holder "unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." The Court in *Bank of Ripley v. Sadler,* 671 S.W.2d 454, 457 (Tenn.1984), set forth the standard for determining when the defense of impairment of contract has been established.

> We think the test of whether a secured party or holder has unjustifiably impaired collateral not in his possession is that of reasonable care under all of the relevant circumstances of the case. The burden of proof is upon the party asserting the impairment of collateral to prove by a preponderance of the evidence that the holder has not used reasonable care under all of the circumstances and to prove the monetary extent to which the collateral has been impaired as a direct result of the failure to use due care, because the discharge of the surety, if impairment is shown, is pro tanto only.

671 S.W.2d at 457.

Plaintiff does not seek to demonstrate that it actually exercised due care in these matters, but instead argues that the guaranty agreements contained a waiver provision wherein the Defendant consented to the Bank's release of the collateral.

There is a recognized exception to the general rule of discharge upon release of collateral where the debtor has consented to the release. See *Ottenheimer Publishers,* p. 280. In *FDIC v. Associated Nursery Systems,* 948 F.2d 233, 240 (6th Cir. 1991), the Court found that even though the guarantor had no prior notice of the sale of certain assets, the guarantor had consented to the release of collateral through his signing of the continuing guaranty agreement.

■ The guaranties signed by defendant authorized the Bank to:

> [I]n such a manner and upon such terms as you or either of you may see fit to renew, extend the time for, or change the manner of, payment of any such sum or sums of money, or any part thereof, without notice to us . . .

The guaranty agreement also covered "any and all sums of money that may now, or may at anytime hereafter, be owing" by Toyota of Morristown "executed by it to you or either of you and upon notes, bills receivable, drafts, acceptances, checks, and other evidences of indebtedness." While the guaranties do not contain specific language consenting to the release of collateral, they implicitly consent to such changes by the fact that it is a continuing guaranty securing all debts owing to the Bank by Toyota of Morristown.

■ The reason lies in the distinction between a continuing guaranty and a specific or limited guaranty. A guarantor who guarantees a specific note, which is also secured by collateral, is responsible solely for that note. When he becomes a guarantor, his obligations are tied up with the specific note and his agreement to become a guarantor might hinge upon the fact that the note is secured by collateral. Thus, the potential risk of a guarantor on a particular note may not be altered by the unjustifiable impairment of the collateral by the creditor.

■ The circumstances of a continuing guarantor are far different, however. A continuing guarantor does not guarantee a particular note, but rather guarantees an overall indebtedness. A continuing guarantor is thus obliged to pay the debts of

the defaulting principal whether those debts are secured by collateral or not. In short, a continuing guarantor cannot rely on the presence of collateral securing a particular note, absent a specific provision providing that the collateral secures all notes. See *Union Planters Nat'l Bank of Memphis v. Markowitz*, 468 F.Supp. 529, 535 (W.D.Tenn.1979). As long as the continuing guaranty in this case was in effect, nothing prevented Toyota of Morristown from incurring new debts to plaintiff secured by no collateral whatever. Under these circumstances, the fact that the note in question was secured by collateral was largely fortuitous from the point of view of the continuing guarantor.

▪ Defendant claims that in signing the guaranty agreements, he relied upon the existence of collateral securing the debt and upon certain statements made by the Bank regarding the collateral. While the cardinal rule in the construction of contracts is to ascertain the intention of the parties, *Frizzell Construction Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn.1999), where the contract is plain and unambiguous, the Court's function is to interpret the contract as written according to its plain terms. *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn.Ct.App.1999). Accordingly, Defendant Dorrough cannot be relieved from his written obligation because of an unfortunate and erroneous assumption.

▪ Where the guaranty is a continuing guaranty, there is no obligation to give notice to the guarantor that new obligations are being incurred for which the guarantor will be liable, absent a contractual undertaking to do so. See *Third National Bank in Nashville v. Friend*, 626 S.W.2d 464 (Tenn.Ct.App.1981). As the Court in *Friend* stated:

This Court is not entirely comfortable with the present state of the law as to continuing guaranties. However, it is part of the law of contracts which allows great freedom and latitude in the contracts which may be made by the parties, but places upon the parties a heavy burden to minutely examine and understand what they sign.

626 S.W.2d at 467.

We conclude the Trial Court correctly determined that the language of the guaranty constituted a waiver of defendant's asserted defense of impairment of collateral. Plaintiff established that the requirements for summary judgment had been satisfied, and we affirm the Judgment of the Trial Court. The cost of the appeal is assessed to defendant, Steven T. Dorrough.